12-1285 BARON SERVICES v. MEDIA WEATHER May it please the Court, the Court should only have to decide on one issue in this case. If the discovery we saw was relevant, then we were entitled to conduct that discovery before summary judgment was granted, and the case should be reversed for that reason alone. Well, the problem here is that we don't have a claim construction, and so it's a little hard to know whether the material that was being sought is relevant. What is your view of the claim construction? Does this claim cover the retransmission of weather data received from the National Weather Service to clients who happen to live in an area affected by a weather service alert? It depends on the analysis that is conducted by the MWI product. And according to the affidavits which were filed by MWI, there is some analysis that is conducted. According to the argument that their counsel made at the summary judgment hearing, there is some analysis that is conducted. What do you mean by that? If all they are doing is taking the weather service data, finding out which areas are affected, and forwarding that data to people who have cell phone addresses within that area, is that an infringement of the patent? If that is all they do, if all they do, which is what they said in their affidavits, is simply take a weather service alert and without any analysis whatsoever, simply send that to a customer, it would not be infringing. But they, again, have stated there is some analysis that occurs. We don't know the details of that analysis. Okay, this weather alert affects three particular locations, and then they have to look at their subscriber list to determine and identify who to send it to. That doesn't violate the patent. That's not the nature of the analysis you're talking about here, is it? I think the nature of the analysis we're talking about is specifically determining what weather event we're dealing with, determining what customer in what location should be alerted that this alert has been issued. And again... Is that what the patent is about? Is that what the patent covers? It covers them getting a weather alert from someone and then figuring out which of its customers... I mean, I'm not understanding what the patent is. It relates to taking weather information, weather data, determining who may be affected by that alert or what location may be affected by that alert, and then determining who... Okay. The question is, do they go beyond that? And what does the patent cover beyond that? Well, the patent would cover, again, receiving weather alerts, analyzing those alerts to determine what geographic area, what geographic grid... If these particular counties in northern Virginia are going to be affected by a tornado, potentially, then that's what the weather alert that they receive says. They don't have to do anything with that. They're not the ones that are identifying it. That's what the alert does, right? The alert typically has to include the location. Correct. All right. So the patent, that can't be the innovative aspect of the patent, right? I don't believe that is the innovative aspect of it. So if you receive a weather alert that identifies the nature of the weather disturbance and who's going to be affected, what is the patent about? What does the patent do? What does it claim? The patent claims it's an ability to not simply rely on purely the National Weather Service alert and determine what county or district is covered by the alert, but to instead go beyond that and essentially improve on the National Weather Service alert and determine what geographic grid would actually perhaps be affected by this weather, and then issue an alert to... So they're doing analysis about the area affected that's beyond the information they receive. Correct. And therefore, if the alleged infringer does not reanalyze the data received from the Weather Service in terms of identifying different locations, there's no infringement, right? If there's no analysis, correct. What does no analysis mean? I just gave you what you told me analysis means, that they take the locations identified by the National Weather Service and they reanalyze them and do their own independent analysis about what locations are going to be affected by this storm. That's what I thought, am I wrong? That's what I heard you say is this patent is about. Correct. So that's the nature of the analysis that's covered by the patent, right? Correct. And what basis do you have for assuming there's infringement, or at least for making a case for alleged infringement? Again, what we know is that there is some analysis that is conducted. We don't know the details of the analysis. You have the output, right? You've got copies of the output. We do have outputs. Does the analysis matter? I mean, didn't Barron concede in discovery that as long as the information that was passed out was a National Weather Service information, I guess unadulterated or unchanged, that there was no infringement? If all they do is simply take a weather alert and distribute that alert. And when you look at the rest of the record, for example, the website for a weather call for media weather, what they say is that they monitor and they send out National Weather Services alert right here. We deliver rapid notifications of official National Weather Service severe weather warnings. So all they're doing is delivering. Does it matter what kind of analysis or who, if 10 people are involved, if all they're doing in the end is sending out the official National Weather Service alerts? I think not, if that is all they're doing in the end. Well, didn't you have access to the output and the input? You get the National Weather Service alerts are in the public domain. The outputs, which is what they've gone to their subscribers with, that's stuff you had access to, right? Correct. So if you compare the outputs to the inputs and the information contained on those are identical, on what basis would you allege that there's some sort of re-evaluation? Because we have the input, we have the output. We still don't know how they determine who should get the output. Their website tells it. It says you register on our website, give us your phone number, your zip code, your email address, and when we get an alert that is to your neighborhood, we'll send it to you. Well, but again, according to their affidavits, according to what their counsel said at the Summer Judgment Hearing, there is some analysis that is conducted. But you conceded that if all they're doing is sending out official National Weather Alerts or information, that there's no infringement. So what does it matter what kind of analysis, whether they do it in a dark room or a lit room or... If all they're doing in the end is sending out official National Weather Service warnings and alerts, and you conceded that that's not infringing... Because you still have to decide who should get the alerts. Well, can't you still? You look at the input. The National Weather Service identifies four locations. And then you have the output. You see what locations, what subscribers were sent this information. Is there some discrepancy there? In order to infringe, therefore, you're suggesting that the person to whom the outputs were sent would have to be somehow different than not be in the locations identified by the National Weather Service, right? Well, we don't know who weren't sent the alerts. Perhaps there were people who lived in the same... If there's a weather service alert for a particular county, I don't know. And let's say they have a bunch of customers in that county. I don't know if they sent alerts to all of those customers or not. I don't know. Well, you can request their subscriber lists, right, and determine whether or not there were subscribers in a particular county that were or were not contacted, right? I suppose we could. If I understand what you're saying, there's a National Weather Service alert for Loudoun County. They may be looking at that and saying, well, we don't think it really affects all of Loudoun County. So we're only going to send it to the subscribers of the northern half of the county because we think those are the people who are affected. That's the type of analysis that you think they may engage in, which would, in your view, be an infringement. Is that correct? Correct. But that's not what you conceded to during discovery. During discovery, you said that if all they're doing is sending out information, the forwarding, the National Weather Service alerts, and that information, then there's no infringement. What does it matter if they cover all of Loudoun County or just part of it if the information they're sending out is only the official National Weather Service alerts? Because, again, they have to make a judgment, some sort of judgment, or some process for determining who should get the alerts. But you conceded that it's not infringing if all they're doing is sending out National Weather Alerts. We conceded, and it was specifically stated, if all they're doing is taking National Weather Service alerts and forwarding them without analysis, then that would not be an infringement. That's correct. That is the concession that we made. So your answer changes to Judge Dyke because, therefore, the fact that they decided to send them to only a portion of Loudoun County, you've conceded it's not infringement even if that's what they did. But, again, there had to be some analysis made to determine which people in the county should get the alerts. Okay, so back to the question about why you need, what information you need. Why isn't that ascertainable by the input, the National Weather Service, and the output? If you have a list of subscribers in Loudoun County, then you can determine whether a certain number of those were sent the alert and others weren't. And, therefore, you can ascertain whether there's some parsing of the National Weather Service information location that's going on, right? That would, that certainly would be evidence. Well, did you try to do it? Did you have access to that information? I don't believe we have, Your Honor. Well, what we did do is repeatedly ask for the opportunity to depose the two witnesses that they relied on in moving for summary judgment and opposing our ability to get the source code and in moving for summary judgment. And those witnesses testified without dispute that it is the source code, which is the means by which their products receive alerts, determine who should get the alerts. So the source code is highly relevant and depositions of the two people they rely on, affidavit testimony of the two people they rely on, is highly relevant. And we believe that our ability to depose and opposing parties' witnesses should not depend on our ability to convince a court that they may testify contrary to what they did in their declaration, in their affidavit. The bottom line in terms of infringement, if all the source code does or if all that's going on here is they've got a list of subscribers and the subscribers are asked to identify, you want alerts for the following zip codes. And all they do is get the National Weather Service information, take the lists of zip codes that are identified by particular subscribers and send them off to those folks. Then there's absolutely no question of infringement. It seems to me if you assume that that is all they do, that there would not be infringement. There was evidence, more evidence in the record saying that that's all they did. You have declarations that were submitted to the court. That's true, Your Honor. And again, it's not... So there's evidence in the record, the website page I showed you, declarations, your own interrogatories. Why is that not enough for the judge to decide this on summary judgment? Because I don't think the judge, I don't think it was appropriate for the judge to simply assume that their affidavit testimony was truthful. This court addressed that exact issue in the MetLife v. Bank Corp case that we discussed in our brief and held that the district court should not simply have treated declarations as truthful and should not have denied a Rule 56D or then 56F motion on the basis that the party who was seeking the discovery had not proven that the witnesses would testify contrary to their declarations. I think we had a right under Eleventh Circuit Law, and this issue was governed by Eleventh Circuit Law, which very liberally interprets and applies Rule 56D. I think we had a right to challenge the truthfulness of their affidavits by simply deposing their own witnesses, their own employees. You had the chance to depose them prior to the summary judgment hearing. Why didn't you do it then? The summary judgment hearing took place on January 24. On January 10, they finally let us know they would allow the depositions. They had refused to allow them before that. They gave us dates of January 17 to 18. We could not take the depositions on that short notice. The court was informed, it knew, prior to the summary judgment hearing that we had agreed that the depositions would take place in mid-January. But let's go back. There was a lot of squabbling going on about making people available for depositions. So a summary judgment hearing is teed up. You got declarations that are being submitted by your opponents. You got this other evidence. You got your own interrogatories where you made a concession of non-infringement. The opponents make available on three different days, three consecutive days, the officials for you to depose them. Why didn't you jump on that? Again, we simply couldn't do it on that short notice. The three days they gave us were a week from the date that they gave us. We couldn't do it on that short notice, so we agreed on mid-February and the court was aware that we had that agreement. We had repeatedly made the court aware and requested an opportunity to take these depositions before the summary judgment hearing.  We didn't consider it a risk when we had a motion to compel the source code, which had been filed. The court was aware. We had repeatedly asked the court, informed the court we believe we needed these depositions in order to oppose the summary judgment motion. You said that in your opposition to the summary judgment motion that you needed the source code and you needed the depositions, right? That's correct. We did. We did. All right. We'll give you two minutes for rebuttal. Thank you. Mr. Bennett. Your Honors, good afternoon, I think, maybe by now. So why weren't they entitled to take the depositions and get the source code? Oh, they could. They could have taken the depositions if they chose to. Why did they have to take them within a week? Because the hearing got set. We said if you want to take these depositions, the witnesses are available for three days. They chose not to do it. They wanted to take it in mid-February. We told the court in our reply brief that these depositions are scheduled in February. The plaintiff never asked the judge, never asked the judge, Judge Johnson, to postpone ruling until they took the depositions. They opposed summary judgment on the ground that they hadn't been able to take the depositions yet, right? They never asked her. Is that not true? Did they oppose it on the ground that they hadn't taken them? They said they wanted to take them. I don't think they said we can't respond because we don't have these witnesses' depositions. I don't think it's quite that explicit. They asked the district judge to deny summary judgment because they hadn't had the opportunity to get the source code or to depose the witnesses, correct? Can we separate out the witnesses from the source code because I think they're two different issues. They told the judge that they wanted to take these depositions, and we told the judge that they were scheduled for two weeks. And that the judge should not grant summary judgment because the depositions hadn't been taken, right? I don't think it goes that express. I mean, you may be recalling their brief a little better than I. I think they just gloss over the deposition. Gloss over? Yeah, I think so. Where do we find that in the record? Let me see if I can turn to their brief. I'm sorry, I've got the wrong one. Is this the brief? Yeah, this is the brief in the trial court. They argued that the motion is premature. This is on page 614 of the appendix. So they based on MWI's continued refusal to allow important discovery to simply deny the motion. Right. So they asked them to deny it. They did not ask the judge to continue the hearing. That's what Rule 56 means. Well, the thing is, the motion is premature. Right. And you're saying that that doesn't mean – and premature means it's happening too soon before we have the right to do this. And you're saying in the absence of, what, a motion to postpone because we think it's premature, they've kind of waived their rights on this? Yes. Even an oral request to Judge Johnson in the hearing that said, Judge, we've got these depositions scheduled, please, for a ruling for a couple of weeks. They never asked her to do that. So they'd win if they said in the motion, please postpone? They might. Now, we get into the question of what you have to show under 56D. In this circuit, in my circuit, in the Tenth Circuit, you have to support that with a particularized affidavit showing what you expect to get. Third Circuit. I don't know about the Third Circuit. Well, that's a problem because Third Circuit law governs it. No, it's actually Eleventh Circuit, Your Honor. I thought it was. Am I mistaken? This was in Eleventh Circuit. I thought the Eleventh Circuit was a liberal standard. Well, they are liberal. And if you read their cases, they're all over the board. Some of their cases say you have to have a particularized showing. Others say you only have to sort of indicate. It's sort of a very... I'm sorry. I'm really having a hard time with your argument here. Their motion for summary judgment was not... I could understand it. If their motion, their opposition was simply the motion for summary judgment should fail. Then I could see you're coming in and saying... They were arguing the merits of this. They weren't arguing that we need to have the opportunity to get this information. But this motion clearly asks for, in the alternative, the motion is... Say the motion for summary judgment is premature. I don't understand how more closely they could identify for the judge that they needed this information. And it's too soon to do it. I'm not... And it's your basis for trying to defend with the district court judge here exclusively that they didn't explicitly ask for a motion to postpone? They did not ask to postpone the hearing. I think that was incumbent upon them. I think under 56D, they had to at least tell their why. And in Little Circle, weren't they also required to show with some specificity what they're going to go after and look? And the district court said you failed there. You haven't given me enough reason as to why we should postpone. Exactly. Now, Judge Johnson didn't ignore this request. She dealt with it in her order. Yeah, but if you're relying... Forget leaving aside the source code for a moment. Yes. If you're relying... You are relying on summary judgment on the deposition testimony of these witnesses. They haven't yet... The testimony of these witnesses. And they haven't yet had an opportunity to pose these witnesses. Oh, they've had an opportunity, Your Honor. They had an opportunity for five months before this hearing was scheduled. They say you wouldn't make them available. We didn't make them available in December. Pardon me? We didn't make them available in December of 2011. Did not. But her ruling didn't say they haven't proceeded expeditiously or according to the rules, and therefore they've lost their opportunity to seek these depositions. She based it on the fact that, well, we've got these guys say X, Y, and Z, and so that's sufficient for me, and I'm going to grant summary judgment. She didn't call out the fact that they had all this time to do it, so therefore they forfeited their right. She did during the hearing, Your Honor. She said, what have you guys been doing for eight months? She asked that question. So that was the basis for her denying granting summary judgment, saying you have forfeited your right to depose these witnesses because of dilatory tactics, and that's why I'm granting summary judgment? I thought she said that it was enough. You didn't need it. She said in her ruling, in a footnote, and I can give you the page of that, in her ruling she says you've complied with neither the letter nor the spirit of Rule 56D. She was very disturbed by the dilatory tactics of this plaintiff. What's the dilatory tactics? You didn't make the witnesses available until January, right? That's not an accurate statement of what happened. We didn't make them available in December of 2011. We told them that they were available in January of 2012, and we told them on the 7th of January. In light of the upcoming hearing, we said if you want these witnesses before this hearing… Yes. Well, so a week before you offered them, they said that's not enough time. Well, that's their choice. They were available. The rule doesn't require that they be made available. You just have to have the opportunity. They had the opportunity. They chose not to take it. So they're the ones who made the gamble that maybe the judge would pay attention to these affidavits, and they didn't take the depositions. That's their choice, wasn't ours. And we made them available. In January. In January. Well, let's see. This is set for the 24th. A week before the hearing, we made them available on three days. Any three days. And they said we can't do it. And then they didn't ask the judge to postpone ruling. So, I mean, that's their choice. Now, let's go to the source code, because you did raise the question of what about the source code. We had filed a motion for protective order, a 26 motion, on the grounds that this is highly confidential information. Judge granted that, saying I can't see the relevance of this in light of the claims of the patent. As you know, the only thing the patent does is it claims a logic. No more description than that. There's no particularized logic whatsoever. So, we said, look, you've got the input. You've got the output. How we do it in the middle doesn't matter. Because your patent doesn't have any specific claims as to how something is done. And we said... The patent does talk about what is done. And why, even if, notwithstanding that maybe there are other ways they could have gotten it. There's no question, right? The source code is relevant. What happens between the time... What you do with the data from the time you get the National Weather Service stuff to the time you give it to subscribers is the heart of this case. You may have an astronomically strong case, ultimately, on the merits of a non-infringement. But you can't suggest that what is done with that data is not relevant. That's the heart of this case. No, it's not the heart of the case. I respectfully disagree. The output we gave them. The output is identical to the input. I.e., you look at our output. It is National Weather Service warning. Verbatim. But that's not sufficient. The question is what you do with the data in terms of identifying who should and should not receive it. That's part and parcel of at least what's going on in the claims, too, right? No, I don't agree at all. I don't. Because it is absolutely protected if we take a National Weather Service warning and we distribute it identically to a customer. How we do that is not impacted by this patent and cannot. Because this National Weather Service information is in the public domain. That's an invalidity question, not an infringement question. Well, it is. And the reason why the source code isn't relevant is because we don't do anything except send out the same thing we get. So how we select our customers is not relevant. It's not something the patent controls. Well, I mean, the problem is we haven't had a Markman yet. We don't know what the patent controls, so there's no record for us. You can tell us what you think the patent controls. But normally the way we conclude whether or not something is relevant to a question of infringement is based on an existing claim construction Markman order. Well, and you saw what happened there. We insisted on a Markman hearing early. The plaintiff said, oh, no, we don't want a Markman hearing early. We want to have regular discovery. So that's the scheduling order we got. I think it's fair to say that they opposed a Markman hearing. Absolutely. They did initially. So they insisted on this generic scheduling order, which we got in. Which provided for a Markman hearing, right? No. It provided for regular discovery, regular process. It did not say whether they would be a Markman hearing scheduled. Then when we served discovery and we asked them, and that's in the record at pages 349 and 50, we said define these terms. One of the terms we asked them to define was analyze. What does the patent mean by the word analyze? They told us, we don't know. It's up to the judge to decide. Add a Markman hearing. Add a Markman hearing. And they proposed a Markman hearing at that point. Well, this is now five months into the case. And they're now saying they want a Markman hearing and they don't want to answer our discovery. And so the judge says, well, wait a minute. You have to at least take a position on what you mean by this stuff. They haven't taken a position on what analyze means except in this court. They have argued to you that if we read the weather service board. Well, the judge can compel them to do that. She can schedule a Markman hearing and they're going to either give her a claim construction and define the claim term. So they're going to get what they get, right? Well, they got what they got because the judge said if you don't know, apparently the defendant knows, and I'm going to go with what the defendant says. The reason why she didn't hold a Markman hearing is because these guys wouldn't participate in the process. They wouldn't define their own terms of their own path. On the key issues of what is meteorological data? What is analyze? What is geographic grid? What is determination? What is impending weather event? They refused to define all of those terms. And did you file a motion to compel that she grant the motion to compel? No, we didn't. We filed a motion for summary judgment saying if they don't know what their patent means, we by God know we're not doing what it claims. And she said that's fine. You don't have to file a motion to compel. You can take their answers at their word that they don't know what their patent means and I'll grant you summary judgment. That's not what the answer said. We don't know what the patent means. Sure it is. They said we don't know. Where? It is on, let's see, I think it is on page 349 and 50 I believe. Yeah, 349 of the record. We asked them this question. Please define and or describe each of the following terms, steps, or processes or devices as they are used in the 525 patent. And describe how each media weather service which you allege infringes the patent incorporates or contains the following terms, steps, processes, or devices. Okay, where do they say that they don't know what it means? Okay, then they provide their answer. Barron objects. It's premature in light of the Markman timetable proposed for entry. The court had not entered that. Barron will provide appropriate responses in accordance with the proposed schedule. Where does it say they don't know? Well, I'll get to it here. Terms, let's see, they continue with their objections. Some place they say we do not know how the court will define it. Well, maybe this is just all their objections. Maybe it's in response to our request for admission where they say they didn't know. Hang on a second. Counsel, just reading the page that you cited, it seems to me that what opposing counsel did is they reserved the right to define the claims during the Markman hearing. That's what they were trying to do, except that the judge said we're going to do discovery in a normal process, and then she would decide whether there was going to be a Markman hearing. Oh, so we asked them in connection with our request for admission. We asked them, for example, on, I've got to find a specific one on. I think we can find it in the record. It's on our request for admission. We asked them each one. Oh, here's the one I was looking for, Your Honor, on 19. Admit that a weather warning service that does not combine or analyze meteorological data doesn't infringe the patent. And they said we don't know what meteorological data means, and that's to determine their patent. So we said we don't. What page are you reading from? It's on 383. Excuse me, 384. Barron is without sufficient information to know how the court would define, combine, or analyze meteorological data. That's how the court would define it. Okay, thank you. We understand. Oh, thank you, Your Honor. Okay, Mr. Kelly, you have two minutes. 11th Circuit case law on Rule 56D is not all over the map. The court has repeatedly held that it is an abuse of discretion and it is a reversible error to deny discovery under the same circumstances presented here. We discussed that case law in our brief, and they didn't find a single basis to distinguish it. Their only argument was the discovery we sought is not relevant, which is a separate issue. In their briefs, they impliedly conceded that we did meet the requirements of Rule 56D under 11th Circuit law. Also, we did not gloss over the depositions. We informed the court, this is at page 441 of the record, in our reply brief in support of our motion for a markman hearing, we informed the court that summary judgment would be untimely because we needed the depositions of the MWI employees. Then again, in opposition to their summary judgment motion, we informed the court, and this is at pages 598 of the record, pages 614 to 615, and page 619, again expressly told the court, these are the witnesses they rely on. We need an opportunity to please depose these witnesses so that we can test the truthfulness of their affidavits and depose the summary judgment motion. Also, on the issue of a markman hearing, we were the first to propose that. That's at pages 447 to 448 of the record. We proposed to MWI right off the bat, let's agree to a markman schedule. They wouldn't do that. They came back, this is pages 306 and 309. They wanted a phased approach to discovery with limited discovery to occur prior to a markman hearing. We could never agree, reach an agreement on a markman schedule, so we just proposed a scheduling order that did not have one. Later, they served their written discovery where they specifically, they were looking for our claimed construction positions. We didn't just refuse to answer that. We objected, but simultaneously, on the same day, asked the court for a protective order and asked the court to enter a markman schedule and to adopt the patent rules, which are followed by another judge in the district. As the district court itself stated when it granted summary judgment, it stated it was sure that our discovery responses were well-intentioned and in good faith, and the court was correct about that. I think we're out of time. Thank you very much, Mr. Kelly. Thank both counsel. The case is submitted. That concludes our session for today. All rise.